**IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE IN AND FOR KENT COUNTY**

| | | |
|---|---|---|
| VILLAGE OF WESTOVER HOMEOWNERS' ASSOCIATION, INC. | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No.: CPU5-22-000206 |
| KARREN D. ODWIN, KEVIN L. ODWIN, JR., KANDYCE ODWIN, CHRISTINA ODWIN, KONYE D. ODWIN, JR. | ) ) ) ) ) ) | |
| Defendants. | ) | |

Submitted: January 18, 2023
Decided: March 2, 2023

## DECISION AFTER TRIAL

The Village of Westover Homeowners' Association, Inc. ("Plaintiff") brings this action against Karren D. Odwin, Kevin L. Odwin, Jr., Kandyce Odwin, Christina Odwin, and Konye D. Odwin Jr., (collectively "Defendants") to recover unpaid assessments. On October 24, 2022, a trial was held in the matter and the Court heard testimony from four witnesses[1], and documentary evidence was submitted by the

---

[1] Plaintiff had Dino Peronti testify for its case-in-chief. Defendant Kandyce called Defendant Karren and Defendant Kevin Jr. as witnesses. Defendant Kandyce also testified during her own case-in-chief.

Parties. At the conclusion of trial, the Court reserved decision. This is the Court's Final Decision After Trial.

## FACTS & PROCEDURAL HISTORY

On April 2, 2022, Plaintiff brought this debt action against Defendants for unpaid assessment fees. According to Dino Peronti ("Peronti"), an employee of Investment Property Services[2], the Declaration of Maintenance Obligations for Village of Westover – Phase VI ("Declaration") is the recorded document that authorizes Plaintiff to subject unit owners within the Village of Westover to certain maintenance obligations.[3] The Declaration permits Plaintiff to collect assessments from unit owners, and any assessments not paid are considered delinquent.[4] Regarding delinquent assessments, the Declaration provides the following:

> "Delinquent assessments unpaid to the Association are the obligation of the owner of real estate at the time the same are incurred, however, in the event of a transfer of a lot with or without improvements, they also become the responsibility of the new owner as between the Association and new owner and any prospective new owner. . ."[5]

The Declaration identifies that ". . . 51 single family units being lot numbers 365 through 395, and 414 through 433, and 18 townhomes being lot numbers 396

---

[2] Investment Property Services is a property management company that represents the Village of Westover Homeowners' Association.
[3] Pl. Ex. 1.
[4] *Id.*
[5] Pl. Ex. 1.

2

through 413" are all bound by the maintenance obligations contained within.[6]

Peronti testified that Defendants are listed on the Kent County Property Information website as the property owners of 211 Westover Drive, Dover, DE 19904 (the "Property"), which is lot number 358.[7] Peronti further testified that the total amount of unpaid assessments associated with the Property is $7,853.25.[8] Peronti stated any communication regarding the unpaid assessments would have only been sent to the address of the Property.

Defendants inherited the Property from Kevin L. Odwin Sr. ("Kevin, Sr.") when he passed away in April 2018.[9] Defendant Karren, the former spouse of Kevin, Sr., retained a life estate in the Property.[10] Defendants Kevin, Jr., Kandyce, Christina[11], and Konye, Jr. (collectively "Codefendants"), as the remaindermen, have an undivided one-fourth future interest in the Property.[12] Defendant Christina did not appear on the day of trial.

It is undisputed that Defendant Karren is the current unit owner of the Property and that she presently lives there. According to Defendant Karren, neither she nor her husband was informed of the requirement to pay assessments at the closing of

---

[6] Id.
[7] Pl Ex. 2.
[8] Pl. Ex. 3.
[9] Id.
[10] Def. Ex. 1.
[11] Although Defendant Christina failed to appear for trial, the Court will consider her as one of the Codefendants for the reasons stated below. To the extent a Default Judgment was orally entered, that judgment is vacated in the interest of justice.
[12] Id.

the Property in 2009 or otherwise. However, she recalled there being a legal action brought against Kevin, Sr. in 2015 regarding unpaid assessments, but the case was dismissed. Defendants Kevin, Jr., and Kandyce both stated that they were not aware of the delinquent assessments until the filing of Plaintiff's lawsuit. Defendant Kandyce received a Cease-and-Desist Letter from the attorney of Defendant Karren stating that Defendant Karren is the legal owner of the Property and that she is allowed full enjoyment of the Property for her life.[13] Defendant Kandyce argued that Defendant Karren is the only person who should be liable for any unpaid assessments because she is the current legal owner of the Property, she presently lives at the Property and she is the only one who had notice of delinquent assessments.

At the conclusion of the trial, the Court identified the following three issues that still needed to be addressed: (1) whether the Codefendants[14] can be found liable for the unpaid assessments fees even though they only hold future interests in the Property, (2) whether 25 Del. C. § 81-316 limits Plaintiff's claim to three years from the date of filing a lien, and (3) whether there was a prior case against Kevin, Sr. and if so, does it impact Plaintiff's ability to collect assessments prior to 2015. Plaintiff

---

[13] Def. Ex. 2.
[14] Codefendants shall only be a reference to Defendants Kevin Jr., Kandyce, Christina, and Konye Jr.

4

was ordered to submit Supplemental Briefing on the above issues. Defendants were afforded an opportunity to respond.

On November 26, 2022, Plaintiff submitted "Plaintiff's Memorandum of Law" ("Plaintiff's Memorandum"). In Plaintiff's Memorandum, Plaintiff addressed the above issues and confirmed that there was a JP Court Case brought against Kevin, Sr. in 2015 for unpaid assessments[15]. Considering such discovery, Plaintiff amended its request for judgment to include only amounts which accrued since 2015. Defendant Kandyce was the only defendant to file a response, which reiterated that Defendant Karren should be the only person responsible for the unpaid assessments because she is presently living at the Property and was the only one with knowledge of the unpaid assessments.

## STANDARD OF REVIEW

As the trier of fact, the Court has the sole discretion to determine the credibility of the witnesses and any evidence provided.[16] The Court must reconcile any conflicting evidence that was presented at trial—if reasonably possible—in order to find congruity.[17] If the Court is unable to find such congruity, the Court must determine which portions of the testimony deserve more weight.[18] The Court

---

[15] In the JP Court decision, the Court determined that Plaintiff had failed to meet its burden of proof and found in favor of Kevin, Sr.

[16] *Nat'l Grange Mut. Ins. Co. v. Davis,* 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).

[17] *Id.*

[18] *Id.*

5

must disregard any portion of the testimony that it finds unsuitable for consideration. The Court considers the witnesses' demeanor, the fairness and descriptiveness of their testimony, their ability to personally witness or know the facts about which they testify, and any biases or interests they may have concerning the nature of the case.[19]

## DISCUSSION

The Court will address Codefendants and Defendant Karren's liability for the unpaid assessments separately prior to addressing the other above-mentioned issues.

### A. Liability for Codefendants

When a life estate is established, the life tenant is entitled to the use and enjoyment of the property.[20] The life tenant's rights to the property may not be encroached upon by the remainderman.[21] As the owner for life, a life tenant is responsible for maintaining the property and "to pay expenses such as taxes, water, sewer and the like".[22]

Here, Plaintiff argues that all Defendants are personally bound to pay the assessments because they are all holders of an ownership interest in the Property.[23]

[19] *State v. Westfall,* 2008 WL 2855030, at *3 (Del. Com. Pl. Apr. 22, 2008).
[20] *Matter of Estate of Bates,* 1994 WL 586822 at *4 (Del. Ch. Sept. 23, 1994).
[21] *Id.*
[22] *Id.*
[23] Pl. Mem. p. 8.

Plaintiff admits that there is no case law to support permitting a homeowner's association to sue all owners including the remaindermen for unpaid assessments.[24] The case law that has been cited is insufficient to persuade the Court. The Court concludes Codefendants cannot be personally liable for these unpaid assessments simply because they hold a future ownership interest in the Property. To the extent that Plaintiff has a right to place a lien against the property, if and when Codefendants' future interest materializes, that lien could be enforceable against them.

Defendant Karren holds the ownership rights of the Property for the extent of her life, a right that Codefendants may not encroach upon. As the life tenant, Defendant Karren is responsible for maintaining the Property and paying expenses.[25] Therefore, the Court finds Codefendants are not liable for the unpaid assessments.

### B. Liability for Defendant Karren

The Court has the duty of weighing the evidence that has been presented at trial. A preponderance of the evidence does not exist if the body of the evidence that does not support a conclusion outweighs the body of evidence supporting that

---

[24] *Id.* at p. 7.

[25] *Matter of Estate of Bates*, 1994 WL 586822 at *4 (Del. Ch. Sept. 23, 1994). *See also Schneberger v. Schneberger*, 978 So.2d 981 (Fla. 4th DCA 2008) (concluding the life tenant was responsible to pay for all ordinary and necessary expenses that inure to a homeowner, including taxes, insurance, and homeowner's association fees.).

conclusion. In order to prevail, Plaintiff must show by a preponderance of the evidence that a debt exists and who is responsible to pay such debt.

Here, Plaintiff has established that pursuant to the Declaration, Plaintiff is authorized to collect assessments from certain unit owners within the Village of Westover.[26] However, Plaintiff has failed to prove, through testimony, documentary evidence, or otherwise, that the Property is subject to the Declaration. The Kent County Property Information website clearly indicates that the Property is located on Lot 358.[27] The Declaration does not list Lot 358 as a lot number subject to the maintenance obligations contained within.[28] There was also no testimony to account for the fact that Lot 358 was excluded from the lot numbers listed in the Declaration or to explain why Lot 358 would be subject to the Declaration despite its apparent exclusion.

On the contrary, there was testimony from Defendant Karren that neither she nor her husband was informed of the requirement to pay assessments. Furthermore, Defendant Karren's belief that there wasn't a requirement to pay assessments was bolstered when the JP Court dismissed the legal action against Kevin, Sr. for unpaid assessments. The evidence before the Court does not support the conclusion that the Property is subject to the obligation to pay assessments under the Declaration.

---

[26] Pl. Ex. 1.

[27] Pl. Ex. 2.

[28] Pl. Ex. 1.

8

Therefore, the Court finds Plaintiff failed to meet its burden of proof. The Court finds in favor of Defendant Karren and against Plaintiff as to the claim for the unpaid assessments. Moreover, the Court's conclusion that Plaintiff failed to establish that the Property is subject to the assessments equally applies to Codefendants.

Since the Court has found that Plaintiff has failed to establish a factual basis for its claims, the remaining issues before the Court are moot.

## CONCLUSION

For the reasons set forth herein, the Court finds in favor of all Defendants and against Plaintiff. Each party is to bear its own costs.

**IT IS SO ORDERED this 2nd day of March, 2023.**

The Honorable Carl C. Danberg
Chief Judge

9